

1  Alisa M. Chevalier (SBN 166090)
   achevalier@reedsmith.com
2  Princeton H. Kim (SBN 217629)
   pkim@reedsmith.com
3  Jean F. Kuei (SBN 229752)
   jkuei@reedsmith.com
4  REED SMITH LLP
5  355 South Grand Avenue, Suite 2900
   Los Angeles, CA  90071-1514
6  Telephone:  213.457.8000
   Facsimile:  213.457.8080
7

8  Attorneys for Defendants
   PLS FINANCIAL SERVICES, INC. and
9  PLS CHECK CASHERS OF CALIFORNIA,
   INC. (formerly known as AZTECA OF
10 CALIFORNIA)



FILED
CLERK, U.S. DISTRICT COURT

FEB - 8 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                         DEPUTY

11

12              **UNITED STATES DISTRICT COURT**

13          **CENTRAL DISTRICT OF CALIFORNIA**

14 | SOFIA SALVADOR AND JEANETTE        Case No.:
      URDIANO, Individually and on Behalf of  [Removal from Superior Court of
15    All Others Similarly Situated,           California, Los Angeles County Superior
16                                             Court Case No. BC 355555]
                    Plaintiffs,        **NOTICE OF REMOVAL OF CIVIL
17                                     ACTION UNDER 28 U.S.C. §§ 1332,
          vs.                          1441 AND 1446; DECLARATIONS
18                                     OF ROBERT WOLFBERG AND
   PLS CHECK CASHERS OF               PRINCETON H. KIM IN SUPPORT
19 CALIFORNIA, INC., PLS FINANCIAL     THEREOF
   SERVICES, INC., AZTECA OF
20 CALIFORNIA, and DOES 1 through 100,  **[CLASS ACTION FAIRNESS
   inclusive,                          ACTION]**
21
                    Defendants.        Complaint filed:  July 17, 2006
22                                     FAC filed:         October 24, 2006
23                                     SAC filed:         December 14, 2007

CV08-00882 AHM (CWx)

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

**TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendants PLS FINANCIAL SERVICES, INC. ("PLS") and PLS CHECK CASHERS OF CALIFORNIA, INC. ("Check Cashers")(formerly known as AZTECA OF CALIFORNIA) (collectively, "Defendants") hereby remove to this Court the state action described below based upon diversity jurisdiction under 28 U.S.C. §§ 1332, 1441 and 1446.

### STATEMENT OF JURISDICTION

1. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), which was enacted on February 18, 2005. *See* 28 U.S.C. § 1332(d). In relevant part, CAFA grants district courts original jurisdiction over civil class actions filed under federal or state law where any member of the putative class is a citizen of a state that is different from any defendant and where the amount in controversy in the aggregate exceeds the sum or value of $5,000,000, exclusive of interest and costs. *Id.* CAFA authorizes removal of such actions pursuant to 28 U.S.C. § 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

### PARTIES AND CITIZENSHIP

2. Defendant PLS, is a corporation, with its principal place of business and record of formation in the State of Illinois. Declaration of Robert Wolfberg ("Wolfberg Decl.") ¶ 4. PLS provides management services to more than 250 financial services centers across the nation in Alabama, Arizona, California, Illinois, Indiana, Mississippi, New York, Texas and Wisconsin. Wolfberg Decl., ¶ 5.

3. Defendant Check Cashers, is a corporation, with its principal place of business and record of formation in the State of California. Check Cashers has 8 financial service centers in California. All of the administrative, executive and

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441 AND 1446

1  personnel functions for Check Cashers are conducted through PLS' corporate

2  headquarters in Chicago, Illinois. Wolfberg Decl., ¶¶ 4-5.

3      4.    Upon information and belief, Plaintiff Sofia Salvador ("Salvador") is an

4  individual who is a resident of the County of Los Angeles in the State of California.

5      5.    Upon information and belief, Plaintiff Jeanette Urdiano ("Urdiano") is an

6  individual who is a resident of the County of Los Angeles in the State of California.

7      6.    Upon information and belief, Plaintiff Alida X. Calderon ("Calderon") is

8  an individual who is a resident of the County of Los Angeles in the State of

9  California.

10      7.    Upon information and belief, Plaintiff Claudia G. Garcia De Encizo

11  ("Encizo") is an individual who is a resident of the County of Los Angeles in the State

12  of California.

13      8.    Plaintiffs seek to represent various sub-classes of current and former

14  employees of Defendants who were employed in the State of California from July 14,

15  2002 to the present.

16      9.    Upon information and belief, DOES 1 through 100 have not been

17  substituted, identified or served in this action. The operative pleading does not set

18  forth any charging allegation against any fictitious defendants. Pursuant to Section

19  1441, the citizenship of defendants sued under fictitious names must be disregarded

20  for the purpose of determining diversity jurisdiction and cannot destroy the diversity

21  of citizenship between the parties in this action. *Newcombe v. Adolf Coors Co.*, 157

22  F. 3d 686, 690-91 (9th Cir. 1998).

23      10.    In turn, diversity of citizenship sufficient to satisfy the requirements of

24  CAFA is present in that at least one putative class member and at least one defendant

25  are citizens of different states.

26                  **FACTUAL AND PROCEDURAL BACKGROUND**

27      11.    Salvador was employed as a cashier from August 30, 2004 to October 21,

28  2005, when she voluntarily resigned her employment. Wolfberg Decl. ¶ 8.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

3

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    12.    Urdiano was employed as a cashier from July 19, 2004 to December 21,

2    2005 when she voluntarily resigned her employment. *Id.*

3    13.    Calderon was employed as a cashier from December 23, 2005 to

4    February 3, 2007 when she was terminated her employment. *Id.*

5    14.    Encizo was employed as a cashier from March 20, 2006 to May 1, 2007

6    when she voluntarily resigned her employment. *Id.*

7    15.    On or about July 17, 2006, Plaintiffs Salvador and Urdiano filed their

8    original Complaint ("Complaint") against Defendants in the Superior Court of the

9    State of California for the County of Los Angeles, entitled <u>Sofia Salvador, *et al.* v.</u>

10   <u>PLS Financial Services, Inc. *et al.*</u>, Case No. BC 355555 (hereinafter, the "State Court

11   Action").

12   16.    The Complaint alleged seven causes of action on behalf of Plaintiffs and

13   the putative class relating to their employment: [1] failure to pay overtime; [2] failure

14   to provide meal and rest periods; [3] failure to furnish wages and hour statements; [4]

15   waiting time penalties; [5] forcing employees to repay cash shortages and other losses;

16   [6] conversion; and, [7] unfair competition based upon violations of the labor code.

17   The Complaint defined the putative class as the following:

18   "Plaintiffs and all other persons who have been employed by

19   Defendants or any of them, as cashiers in the State of California

20   at any time from July 14, 2002, and continuing while this action

21   is pending (the "Class Period")." *See* Complaint ¶ 1.

22   The State Court Action alleges not only individual claims on behalf of Plaintiffs, but

23   also putative class action claims under California law.  Plaintiffs have demanded a

24   jury trial in the State Court Action.  A true and correct copy of the Complaint in the

25   State Court Action is attached hereto as Exhibit 1.

26   17.    Check Cashers was served with copies of the Summons and Complaint in

27   the State Court Action on or about July 27, 2006.  True and correct copies of the

28   Summons, Civil Case Cover Sheet and Civil Case Cover Sheet Addendum and

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441 AND 1446

1   Statement of Location served upon Check Cashers on July 27, 2006 are attached
2   hereto as Exhibit 2.

3        18.    PLS was served with copies of the Summons and Complaint in the State
4   Court Action on or about July 31, 2006.  True and correct copies of the Summons,
5   Civil Case Cover Sheet and Civil Case Cover Sheet Addendum and Statement of
6   Location served upon PLS on July 31, 2006 are attached hereto as Exhibit 3.

7        19.    On or about August 25, 2006, Defendants filed a Demurrer and Motion to
8   Strike against the Complaint.  True and correct copies of the Demurrer and Motion to
9   Strike are attached hereto as Exhibits 4-5.

10       20.    On or about October 24, 2006, before the hearing on Defendants
11  Demurrer and Motion to Strike, Plaintiffs filed their First Amended Complaint
12  ("FAC").  The FAC added several new factual allegations but identified the same
13  seven causes of action identified in the Complaint: [1] failure to pay overtime; [2]
14  failure to provide meal and rest periods; [3] failure to furnish wages and hour
15  statements; [4] waiting time penalties; [5] forcing employees to repay cash shortages
16  and other losses; [6] conversion; and, [7] unfair competition based upon violations of
17  the labor code.  The FAC also relied upon the same definition for the putative class as
18  described in the Complaint.  A true and correct copy of the Complaint in the State
19  Court Action is attached hereto as Exhibit 6.

20       21.    On or about November 27, 2006, Defendants filed a Demurrer and
21  Motion to Strike against the FAC.  True and correct copies of the Demurrer and
22  Motion to Strike are attached hereto as Exhibits 7-8.

23       22.    On or about January 12, 2007, Plaintiffs Salvador and Urdiano filed their
24  Oppositions to the Demurrer and Motion to Strike against the FAC.  True and correct
25  copies of Plaintiffs' Oppositions to the Demurrer and Motion to Strike are attached
26  hereto as Exhibits 9-10.

27       23.    On or about January 19, 2007, Defendants filed their Reply briefs in
28  support of the Demurrer and Motion to Strike against the FAC.  True and correct

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

5

1  copies of Defendants' Replies in support of the Demurrer and Motion to Strike are

2  attached hereto as Exhibits 11-12.

3        24.    On or about January 29, 2007, the State Court overruled Defendants'

4  Demurrer and denied Defendants' Motion to Strike against the FAC.  A true and

5  correct copy of the Court's Order is attached hereto as Exhibit 13.

6        25.    On or about February 15, 2007, Defendants filed and served their Answer

7  with affirmative defenses ("First Answer") to the FAC in the State Court Action.  A

8  true and correct copy of Defendants' First Answer is attached hereto as Exhibit 14.

9        26.    On or about December 14, 2007, Plaintiffs submitted a Stipulation and

10 Request for Leave to File the Second Amended Complaint ("SAC").  The SAC added

11 Plaintiffs Calderon and Encizo as named parties and representatives of the putative

12 class.  The SAC also added a new substantive cause of action for Illegal Forfeiture of

13 Vacation Time and Wages Pursuant to California Labor Code § 227.3.  The SAC also

14 amended the definition of the putative class.  Instead of a single definition, the SAC

15 identified seven sub-classes based upon each of the following causes of action: [1]

16 failure to pay overtime; [2] failure to provide meal and rest periods; [3] failure to

17 furnish wages and hour statements; [4] waiting time penalties; [5] forcing employees

18 to repay cash shortages and other losses; [6] conversion; and, [7] forfeiture of vacation

19 time.  *See* SAC ¶¶ 28(a)-(g).  True and correct copy of the SAC and the Stipulation

20 are attached hereto as Exhibits 15-16.

21        27.    On or about December 20, 2007, the State Court granted the Request for

22 Leave to File the SAC and deemed the pleading filed on December 14, 2007.  A true

23 and correct copy of the State Court's Minute Order approving the Request for Leave is

24 attached hereto as Exhibit 17.

25        28.    Defendants were never served with a conformed copy of the Order

26 granting leave to file the SAC.  The only notice Defendants received regarding the

27 filing of the SAC was a copy of the State Court's Minute Order which was served by

28 Plaintiffs via mail on or about January 4, 2008.  *Id.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

6

29.     On or about February 7, 2008, Defendants filed and served their Answer with affirmative defenses ("Second Answer") to the SAC in the State Court Action.  A true and correct copy of Defendants' Second Answer is attached hereto as Exhibit 18.

30.     The State Court issued Notices of Case Management Conferences and Status Conferences on August 2, 2006, September 8, 2006, February 20, 2007 and January 7, 2008.  True and correct copy of the Notices of Case Management Conferences and Status Conferences are attached hereto as Exhibits 19-22.

31.     The State Court also issued Minute Orders on July 26, 2006, September 26, 2006 (The State Court issued 2 Minute Orders on this date), November 21, 2006, January 26, 2007, February 20, 2007, April 13, 2007, May 2, 2007, May 9, 2007, September 21, 2007 and December 20, 2007 (already identified and attached as Exhibit 17).  True and correct copies of the additional State Court Minute Orders are attached hereto as Exhibits 23-32.

32.     No other pleadings have been filed or served by or on Plaintiff or Defendant other than those attached hereto as Exhibits 1-32.

## TIMELINESS OF REMOVAL

33.     Defendants filed this Notice of Removal within thirty (30) days of service of the SAC, which is the pleading where it was first ascertained that the case has become removable, and the removal is, therefore, timely.  *See* 28 U.S.C. § 1446(b).

34.     As stated above, although the SAC was retroactively deemed filed by the State Court on or about December 14, 2007, Defendants were not served with notice of the Order until January 4, 2008 by mail.  *See* Exhibit 17.

35.     California Code of Civil Procedure § 1013(a), which governs the time period for any response based upon service by mail, states in relevant part that:

> "[A]ny period of notice and any right or duty to do any act or
> make any response within any period or on a date certain after
> the service of the document, which time period or date is

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441 AND 1446

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

prescribed by statute or rule of court, *shall be extended five*

*calendar days, upon service by mail*, if the place of address and

the place of mailing is within the State of California..."

(Emphasis added).

36.   28 U.S.C. § 1446(b), which governs the time for removal based upon an

amended pleading, states in pertinent part that:

"If the case stated by the initial pleading is not removable, a

notice of removal may be filed within thirty days after receipt

by the defendant, through service or otherwise, of a copy of an

amended pleading, motion, *order or other paper* from which it

may first be ascertained that the case is one which is or has

become removable..." (Emphasis added).

37.   Based upon the date and method of service of the Minute Order regarding

the filing of Plaintiffs' SAC, Defendants had until February 8, 2008 to remove the

State Court Action.  Defendants filed this Notice of Removal on or before February 8,

2008.

## AMOUNT IN CONTROVERSY

38.   Plaintiffs' voluntary filing of the SAC was the first instance where

Defendants ascertained that the action was removable under CAFA because it added

an unrelated, substantive cause of action for Forfeiture of Vacation Time under

California Labor Code § 227.3.

39.   As stated in detail below, the new cause of action taken together with the

other claims identified in the SAC likely satisfies the amount in controversy

requirement under CAFA.

40.   Although the SAC is silent as to the total amount in controversy, the

failure to specify damages does not deprive this Court of jurisdiction.  Defendants

need only to establish by a *preponderance of the evidence* that Plaintiffs' claims

exceed the jurisdictional minimum. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

3d 398, 404 (9th Cir. 1996); *Singer v. State Farm Mutual Auto. Ins. Co.*, 116 F. 3d 373, 376 (9th Cir. 1997); *Abrego Abrego v. The Dow Chemical Co.*, 443 F. 3d 676, 683 (9th Cir. 2006).

41.    While Defendants deny Plaintiffs' claims of wrongdoing and their requests for relief thereon, the facial allegations in the SAC and the total amount of claimed wages, damages, penalties, attorneys' fee and other monetary relief exceeds this Court's jurisdictional minimum, and are calculated as follows:

42.    The SAC alleges that the putative class consists of:

**"Plaintiffs and all other current and former employees who worked for Defendants, or any of them, as cashiers or similar position, in the State of California at any time from July 14, 2002, and continuing through class certification (the "Class Period")."** *See* SAC ¶ 1.

Based upon Plaintiffs' definition of the putative class, PLS estimates that there are approximately 325 putative class members in its California stores. Wolfberg Decl., ¶ 6.

43.    On behalf of the alleged class, Plaintiffs seek to recover damages for:

(1) failure to pay overtime compensation in violation of Labor Code sections 510 and 1194,

(2) failure to provide meal and rest periods in violation of Labor Code sections 226.7 and 512,

(3) civil penalties for failure to furnish wage and hour statements in violation of Labor Code section 226,

(4) waiting time penalties pursuant to Labor Code sections 201 to 203,

(5) requiring repayment of earned wages in violation of Labor Code section 221,

(6) conversion pursuant to Civil Code section 3336,

(7) illegal forfeiture of vacation time and wages in violation of Labor Code section 227.3 and

(8) unfair competition in violation of Business and Professions Code section 17200, *et seq.*

44. Plaintiffs seek compensatory damages, interest, reasonable attorneys' fees and costs, and liquidated damages and penalties on the first, fifth and seventh causes of action. *See* SAC, Prayer for Relief.

45. Plaintiffs seek compensatory and penalty damages, interest, reasonable attorneys' fees and costs and waiting-time penalties pursuant to Labor Code section 203 on the second cause of action. *See* SAC, Prayer for Relief.

46. On the third cause of action, Plaintiffs seek injunctive relief, penalties and damages pursuant to Labor Code section 226(e), interest, and attorneys' fees and costs. *See* SAC, Prayer for Relief.

47. On the fourth cause of action, Plaintiffs seek waiting-time penalties and reasonable attorneys' fees and costs. *See* SAC, Prayer for Relief.

48. With respect to the sixth cause of action, Plaintiffs seek general, special and punitive damages, and attorneys' fees and costs. *See* SAC, Prayer for Relief.

49. With respect to the eighth cause of action, Plaintiffs seek restitution, interest, attorneys' fees and costs, premium pay and "disgorgement of sums," *i.e.*, restitutionary disgorgement of profits earned by Defendants during the four years preceding the filing of this action by Plaintiffs. *See* SAC, Prayer for Relief.

50. Plaintiffs also seek attorneys' fees, costs of suit and such other and further relief as the Court may deem just and proper on "all causes of action." *See* SAC, Prayer for Relief.

51. Given the approximate number of members of the putative class—325 employees—coupled with the claims for relief over a one to four-year period[1], the

---

[1] The statute of limitations for penalty claims is one year, the statute of limitations for wage and conversion claims is three years and the statute of limitations for violation of the unfair competition statute is four years. Cal. Code of Civ. Proc. §§ 338(a), 340; Cal. Bus. and Profess. Code § 17208.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

10

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   aggregate amount in controversy in this action exceeds $5,000,000. To understand

2   how this threshold is reached, an analysis of each claim and its associated sub-class is

3   warranted.

4   **First Cause of Action for Off-the-Clock Overtime and Regular Overtime**

5   52.    With respect to Plaintiffs' first cause of action for off-the-clock overtime

6   and regular overtime, Plaintiffs define the two relevant subclasses as follows:

    a.    All current and former hourly paid employees, including,

        but not limited to, Cashiers and equivalent hourly paid job

        positions, who worked for PLS in any California location

        and who performed work off-the-clock at any time from four

        years (or applicable statute of limitations) preceding the

        filing of the original complaint in this action. SAC, ¶ 28a.

    b.    All current and hourly paid employees, including, but not

        limited to, Cashiers and equivalent hourly paid job positions,

        who worked for PLS in any California location and who

        were not paid wages for overtime hours worked at any time

        from four years (or applicable statute of limitations)

        preceding the filing of the original complaint in this action.

        SAC, ¶ 28b.

20   Here, PLS faces exposure of approximately $978,909.75 based upon an average

21   of Urdiano and Salvador's alleged damages[2], which are then extrapolated to the

22   325 potential members of the putative class.

23   53.    Urdiano was employed from PLS from July 19, 2004 until

24   December 21, 2005, which is about 76 weeks. Salvador was employed from

---

[2] Because Defendants have yet to conduct any discovery on Calderon and Encizo's claims and damages, this figure is extrapolated from the damages alleged by Salvador and Urdiano in their depositions taken on August 27, 2007 and August 29, 2007, respectively. True and correct copies of the relevant excerpts of Plaintiffs' depositions are attached hereto as Exs. A and B to the Declaration of Princeton Kim ("Kim Decl.").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   August 30, 2004 to October 21, 2005, which is about 60 weeks.  Encizo was

2   employed from March 20, 2006 to May 1, 2007, which is about 60 weeks.

3   Calderon was employed from December 23, 2005 until February 3, 2007, which

4   is about 58 weeks.  Wolfberg Decl., ¶ 8.  The average employment term based

5   upon Plaintiffs' terms of employment was, therefore, 63 weeks (76 + 60 + 58 +

6   58 = 252, 252/4 = 63 weeks).

7        54.    Urdiano testified that she worked approximately 3 to 4 hours of

8   unpaid overtime per week.  Kim Decl., ¶ 3, Ex. A.  Salvador testified that she

9   worked approximately 2 hours of unpaid overtime approximately 2 to 3 times

10  per week (*i.e.,* 4 to 6 hours of unpaid overtime per week) during her entire

11  period of employment.  Kim Decl., ¶ 4, Ex. B.

12       55.    The average amount of unpaid overtime that Urdiano and Salvador

13  allegedly worked, therefore, was 4.25 hours per week ((3 + 4 =7, 7/ 2 = 3.5) +

14  (4 + 6 = 10, 10/2 = 5) = 8.5, 8.5/2 = 4.25 hours)).  Based upon the average

15  starting wage rate of $7.50/hour the average amount of overtime wages claimed

16  to be owed to Plaintiffs is, $2,486.12 each ($7.50 x 1.5 times = $11.25

17  (overtime rate), $11.25 x 4.25 (overtime hours/week) = $47.81/week,

18  $47.81/week x 63 weeks (average term of employment) = $3,012.03).

19  Wolfberg Decl., ¶ 6.  Reasonably extrapolating this number to the entire class,

20  the amount of potential liability PLS faces on this cause of action is

21  $978,909.75 ($3,012.03 x 325 putative class members = $978,909.75).

22  **Second Cause of Action for Failure to Provide Meal and Rest Periods**

23       56.    With respect to Plaintiffs' second cause of action for failure to

24  provide meal and rest periods, Plaintiffs define the relevant subclass as follows:

25            c.     All current and former hourly paid employees, including,

26                   but not limited to, Cashiers and equivalent hourly paid job

27                   positions, who were not provided mandated uninterrupted

28                   meal periods and rest periods and who worked at any time

from four years (or applicable statute of limitations)

preceding the filing of the original complaint in this action.

SAC, ¶ 28c.

Here, PLS faces possible exposure of approximately $1,416,187.50 based upon an average of Plaintiffs Urdiano and Salvador's alleged damages, which are then extrapolated to the 325 potential members of the putative class.

57.    Urdiano testified that she did not take a 30-minute meal period approximately 4 times a week during her entire period of employment. Kim Decl., ¶ 3, Ex. A. Salvador testified that she never took a 30-minute meal period until about the last 2 months (or 8 weeks) of her employment. Because Salvador claimed that she worked 6 days a week, this meant that she did not take a 30-minute meal period approximately 6 times per week. Kim Decl., ¶ 4, Ex. B. Therefore, the average amount of meal periods that Urdiano and Salvador missed was 5 meal periods per week (4 + 6 = 10, 10/2 = 5 meal periods).

58.    Accordingly, the amount of premium pay[3] potentially owed to Plaintiffs for the missed meal periods over the course of their employment is $2,400.00 each ($7.50/hour regular rate x 5 days/week x 76 weeks (76 weeks (Urdiano's term of employment) + 52 weeks (Salvador's term of employment minus the 8 weeks in which she received meal periods) = 128 weeks, 128 weeks/2 = 64 weeks)).

59.    Urdiano testified that she never took a 10-minute rest period until her last year of employment, at which time she received the "majority" of her rest breaks. She testified that this meant that she only missed approximately 1 to 2 rest periods per week during her last year of employment. Kim Decl., ¶ 3, Exh. A. To the contrary, Salvador testified that she "rarely" and "almost never" took a 10-minute rest period during the entire course of her employment. Kim Decl., ¶ 4, Exh. B.

---

[3] Pursuant to Labor Code section 226.7, the penalty for a missed meal or rest period is one hour of pay at the employee's regular rate for each missed meal or rest period in a work day. Cal. Lab. Code § 226.7(b).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441 AND 1446

60.    Reasonably estimating, therefore, that Urdiano missed 6 rest periods a week (because she claimed that she worked six days per week) for about 24 weeks (first year of employment) and that she missed 1.5 rest periods a week for about 52 weeks (the average of the 1 to 2 rest periods per week that she missed during her last year of employment), and that Salvador missed 5 rest periods a week for about 60 weeks (since she "rarely" got them), the average amount of rest periods that Plaintiffs missed was approximately 261 rest periods ((6 rest periods/week x 24 weeks = 144 rest periods) + (1.5 rest periods/week x 52 weeks = 78 rest periods) + (5 rest periods/week x 60 weeks = 300 rest periods) = 522 total rest periods, 522/2 = 261 rest periods per Plaintiff).

61.    The amount of premium pay, therefore, potentially at issue for the missed rest periods over the course of their employment is $1,957.50 ($7.50/hour regular rate x 261 rest periods).

62.    In sum, Plaintiffs are owed approximately $4,357.50 each on their meal and rest period claims ($2,400.00 (meal period claim) + $1,957.50 (rest period claim) = $4,357.50).  This number extrapolated to the putative class is $1,416,187.50 ($4,357.50 x 325 putative class members = $1,416,187.50)

**Third Cause of Action for Failure to Furnish Wage and Hour Statements**

63.    With respect to Plaintiffs' third cause of action for failure to furnish wage and hour statements, Plaintiffs define the relevant subclass as follows:

> d.    All current and former hourly paid employees including, but not limited to, Cashiers and equivalent hourly paid job positions, who were not provided with accurate itemized wage statements, at any time from three years (or applicable statute of limitations) preceding the filing of the original complaint in this action.  SAC, ¶ 28d.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Here, Defendants face possible exposure of approximately $1,023,750.00 based upon

2    an average of Plaintiffs Urdiano and Salvador's alleged damages, which are then

3    extrapolated to the 325 potential members of the putative class.

4           64.    Based upon Plaintiff's average length of employment (63 weeks) and a

5    bi-weekly pay period, Plaintiff's allegations would have resulted in approximately 32

6    defective wage statements over 63 work weeks (63 weeks/2 = 31.5 rounded up to 32

7    pay periods).

8           65.    Pursuant to Labor Code section 226(e)[4], the maximum amount of

9    potential recovery for this claim for each of the Plaintiffs would be $3,150.00 in

10   penalties ($50 for the defective wage statement during the initial pay period + $100.00

11   for each defective wage statement per pay period thereafter ($100 penalty x 31 pay

12   periods) = $3,150.00).  Reasonably extrapolating this number to the putative class,

13   PLS faces $1,023,750.00 in potential liability for this cause of action ($3,150.00 x 325

14   putative class members = $1,023,750.00).

15   **Fourth Cause of Action for Waiting Time Penalties**

16          66.    With respect to Plaintiffs' fourth cause of action for waiting-time

17   penalties pursuant to Labor Code section 203, Plaintiffs define the relevant subclass as

18   follows:

19          e.     All current and former hourly paid employees including, but

20                 not limited to, Cashiers and equivalent hourly paid job

21                 positions, whose employment with PLS in California ended

22                 at any time from three years (or applicable statute of

23

24   4 "An employee suffering injury as a result of a knowing and intentional failure by an employer to
25   comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars
     ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per
26   employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four
     thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."  Cal.
27   Labor Code § 226(e).

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441 AND 1446

limitations) preceding the filing of the original complaint in
this action and who were not paid all wages due them within
the tine prescribed by the California Labor Code.

SAC, ¶ 28e.

Here, Defendants face possible exposure of approximately $585,000.00 based upon an average of Plaintiffs Urdiano and Salvador's alleged damages, which are then extrapolated to the 325 potential members of the putative class.

67.    Plaintiffs alleged that Defendants are liable for waiting time penalties pursuant to Labor Code section 203[5].  Based upon the average workday of 8 hours per day, each putative class member's claim would be valued at a maximum of $1800.00 in waiting time penalties (8 hours x $7.50/hour (regular rate) x 30 days = $2,040.00). Wolfberg Decl., ¶ 6.  Reasonably extrapolating this number to the entire class, the potential value of this claim is approximately $585,000.00 ($1,800.00 x 325 putative class members = $585,000.00).

**Fifth Cause of Action for Requiring Repayment of Earned Wages**

68.    With respect to Plaintiffs' fifth cause of action for requiring repayment of earned wages, Plaintiffs define the relevant subclass as follows:

f.    All current and former hourly paid employees including, but
not limited to, Cashiers and equivalent hourly paid job
positions, who worked for PLS in any California location
and from whom PLS deducted from their wages or
otherwise required employees to repay cash shortages at any
time from four years from the filing of the original
Complaint.  SAC, ¶ 28f.

---

[5] "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203.

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441 AND 1446

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Here, Defendants face potential exposure of approximately $893,750.00 based upon an average of Plaintiffs Urdiano and Salvador's alleged damages, which are then extrapolated to the 325 potential members of the putative class.

69.     Salvador testified that she had to repay approximately $2,500.00 to $3,000.00 of her earned wages to Defendants for cash shortages or cashing bad checks.  She further testified that "everybody who worked at the store had to pay an amount of money for the checks that were returned or money that was lost."  Kim Decl., ¶ 4, Exh. B attached thereto.  Because Urdiano did not provide any testimony regarding cash shortages, for purposes of this calculation, Defendants rely upon Salvador's testimony.  Based upon Salvador's testimony, the average amount of earned wages that she was required to repay was $2,750.00 ($2,500.00 + $3,000.00 = $5,500.00, $5,500.00/2 = $2,750.00).

70.     Accordingly, reasonably estimating that each putative class member was required to repay approximately $2,750.00 of their earned wages, the value of this claim is reasonably calculated to be approximately $893,750.00 for repayment of wages ($2,750.00 x 325 putative class members = $893,750.00).

**Seventh Cause of Action for Illegal Forfeiture of Vacation Time**

71.     With respect to Plaintiffs' seventh cause of action for illegal forfeiture of vacation time, Plaintiffs define the relevant subclass as follows:

g.     All current and former hourly paid employees including, but not limited to, Cashiers and equivalent hourly paid job positions, whose employment ended at any time from four years (or applicable statute of limitations) preceding the filing of the original Complaint and who did not receive payment at the time of their termination of all vested vacation wages which were illegally forfeited during the four years preceding the employee's termination.

SAC, ¶ 28g.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441 AND 1446

Here, Defendants face possible exposure of approximately $126,750.00 based upon their vacation policy that was in effect during the relevant time period of this lawsuit.

72.     Under the policy, Defendants' employees who worked at least one year were provided with 5 days of vacation and Defendants' employees who worked two to seven years were provided with 10 days of vacation. Wolferg Decl., ¶ 6, Exh. A. In addition, "vacation days [did] not "accrue" from year to year and [could] not be 'cashed in' at the end of a year of not used." *Id*. Accordingly, Plaintiffs allege that they illegally forfeited all vacation days they accrued during the course of their employment with Defendants, which were not rolled over from year to year.

73.     Because the average employment term for Plaintiffs was approximately fifteen months (17 months (Urdiano's term of employment) + 14 months (Salvador's term of employment) + 14 months (Encizo's term of employment) + 14 months (Calderon's term of employment) = 59 months, 59/4 = 14.75 rounded up to 15 months), Plaintiffs would have accrued approximately 6.5 vacation days by the 15th month of employment (.42 days of vacation accrued/month x 15 months= 6.3 rounded up to 6.5 days of vacation). Plaintiffs allege that these vacation days were improperly forfeited based upon Defendants' vacation policy that was in effect during the time of Plaintiffs' employment.

74.     Therefore, according to Plaintiffs' claims, each putative class member would have lost an average of 6.5 days of vacation within the four-year statute of limitations period. For each putative class member, the amount of potential recovery is $390.00 ($7.50/hour regular rate x 8 hours/day x 6.5 days = $390.00). This number extrapolated to the putative class is $126,750.00 ($390.00 x 325 putative class members = $126,750.00).

75.     Additionally, Plaintiffs seeks an undisclosed amount for restitution, disgorgement of funds, interest and costs, and attorneys' fees. SAC, Prayer for Relief. Insofar as restitution and disgorgement are concerned, those amounts are duplicative of the damages calculations discussed above.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

18

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

76.    With regard to interests and costs, those amounts are excludable and cannot be used to calculate the amount-in-controversy requirement for purposes of removal under CAFA. *See* 28 U.S.C. § 1332(d).

77.    With respect to attorneys' fees, because no discovery has been conducted on Plaintiffs' attorney fees or fee arrangements to date and the case is still in its early stages of litigation, attempting to calculate attorneys' fees at this time would be purely speculative and mere conjecture.  Accordingly, Defendants have no credible basis for calculating attorneys' fees for purposes of reaching the amount-in-controversy requirement for removal pursuant to CAFA.

78.    Nevertheless, the reasonable calculations of damages stated herein based upon Plaintiffs sworn testimony demonstrates that the amount in controversy in this putative class action, as pled by Plaintiffs, more than $5,000,000.00 million ($978,909.75 (overtime) + $1,416,187.50 (meal and rest periods) + $1,023,750.00 (itemized wage statements) + $585,000.00 (waiting time penalties) + $893,750.00 (repayment of earned wages) + $126,750.00 (vacation) = $5,024,347.20) and therefore, the minimum jurisdictional requirements for removal under CAFA are satisfied.

79.    Notwithstanding all of the foregoing paragraphs of this Notice of Removal, Defendants expressly reserve and do not waive their rights to challenge or oppose any class certification motion.  Further, Defendants are not conceding any liability or damages, and reserve the right to challenge the allegations of Plaintiffs on behalf of themselves and the putative class.

## **VENUE**

80.    The Superior Court of California for the County of Los Angeles is located within the United States District Court for the Central District of California, Western Division. *See* 28 U.S.C. § 84(c)(2).  Thus, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

**COMPLIANCE WITH 28 U.S.C. § 1446**

81.   No previous application has been made for the relief requested herein.

82.   Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served on Defendants, including all operative pleadings and Summons will be filed and attached with this Notice of Removal and/or its supporting papers.

83.   In compliance with 28 U.S.C. § 1446(a), a copy of Defendants' First and Second Answers filed with the Superior Court of California for the County of Los Angeles will be filed and attached with this Notice of Removal and/or its supporting papers.

84.   Defendants are serving Plaintiffs with written notice of the removal of this action and all supporting papers.

WHEREFORE, because the minimal diversity requirements of CAFA are satisfied, this Court is vested with original jurisdiction over this matter and the State Court Action is removable to this Court for those reasons under 28 U.S.C. §§ 1332, 1441 and 1446.

Dated:  February 7, 2008

REED SMITH LLP

By _____
        Princeton H. Kim
Attorneys for Defendants
PLS FINANCIAL SERVICES, INC. and
PLS CHECK CASHERS OF
CALIFORNIA, INC. (formerly known as
AZTECA OF CALIFORNIA)

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441 AND 1446